UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
MICHAEL R. NAPERT,                        )
                                          )
        Plaintiff,                        )
                                          )   Civil No.
        v.                                )   13-10530-FDS
                                          )
GOVERNMENT EMPLOYEES                      )
INSURANCE COMPANY,                        )
                                          )
        Defendants.                       )
                                          )

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SAYLOR, J.

This is a claim under the Massachusetts wage and hour laws. Jurisdiction is based on diversity of citizenship. Plaintiff Michael Napert worked as an adjuster for defendant Government Employees Insurance Company ("GEICO"). He alleges that GEICO intentionally failed to pay him his earned hourly wages as required by the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, and intentionally failed to pay him overtime wages as required by the Massachusetts Fair Minimum Wage Act, Mass. Gen. Laws ch. 151, § 1A.

GEICO has moved for summary judgment, contending that Napert's position is exempt from the requirements of the Massachusetts wage and overtime laws. For the following reasons, that motion will be granted in part and denied in part.

I. Background

    A. Factual Background

The following facts are undisputed or construed in the light most favorable to the non-

moving party.

In the summer of 2004, Michael Napert began working for GEICO as an auto-damage adjuster. (Def. SMF ¶ 1). According to a compensation memorandum, GEICO agreed to pay Napert an annual salary of $58,000 and a premium wage for every hour he worked over 38.75 hours per week. (Compensation Mem., Pl. SMF, Ex. B). He was required to obtain approval for any overtime compensation. (*Id.*). However, GEICO was obligated to compensate him for any overtime hours that he reported, regardless of whether he received prior approval. (*Id.*).

As an auto-damage adjuster, Napert settled automobile damage claims through negotiations with GEICO policyholders, claimants, and repair facilities. (Def. SMF ¶ 11). He also negotiated prices for repairs and replacement parts. (*Id.*).

When settling claims, Napert traveled to automobile repair shops in New England to assess the damage to vehicles allegedly damaged by an accident. (*Id.* ¶ 13). After examining the vehicle and speaking to the claimant, he would determine how much damage the vehicle suffered, whether the damage was actually caused by an accident, how much of the vehicle's damage existed before the accident, and whether the vehicle should be considered a total loss. (*Id.* ¶¶ 8, 9, 15).[1] He did so using his judgment, training, and experience. (*Id.* ¶¶ 16, 18, 23). He did not speak to any witnesses to the accident other than the claimant. (Pl. SMF ¶ 13).

GEICO issued Napert a laptop with a database and software to assist him in appraising the damage to a vehicle. (Def. SMF ¶ 7). After making an assessment, he would input the figures into the database. (Pl. SMF ¶ 8). The software would then aggregate the cost of the damage. (*Id.*). Napert would then tell the claimant the amount the database said the claim was

---

[1] A vehicle is considered a "total loss" if repairing it would cost 75 percent or more of the value of the vehicle. (Def. SMF ¶ 15).

worth. (Napert Dep. at 83). If the claimant had proof that any of his figures were incorrect, he could fix those errors. (*Id.* at 82-87). Each appraisal took, on average, an hour to complete. (*Id.* at 120).

Napert also sometimes adjusted the figures to increase the settlement amount if a claimant complained. (*Id.* at 124-25). On at least one occasion, his supervisor reprimanded him for doing so and told him that he could not arbitrarily change the figures in the database. (*Id.*).

Napert was authorized to settle insurance claims without approval for any amount up to $15,000. (Def. SMF ¶ 22, 29). He was able to print checks from GEICO to claimants up to that limit. (*Id.* ¶¶ 29-30). He was also authorized to declare a vehicle a total loss without approval. (*Id.* ¶ 24). If he did declare that a vehicle was a total loss, he was authorized to take possession of and have the vehicle towed, and reimburse the claimant. (*Id.* ¶ 25). He was responsible for negotiating and paying towing and storage charges on GEICO's behalf for total-loss vehicles. (*Id.* ¶ 26). He was also responsible for negotiating the reimbursement price for total-loss vehicles. (*Id.* ¶ 31).

Napert's supervisor at GEICO was Justin Koestler. (*Id.* ¶¶ 12). Koestler oversaw Napert's overall performance, but was not typically involved in his day-to-day decisions. (Def. SMF ¶ 35). Koestler traveled with Napert on his trips to examine vehicles about once a month. (*Id.* ¶ 14). Koestler also required him to keep a log of all the work that he had performed and send him an e-mail every time he finished a claim. (Napert Dep. at 104, 115).

Napert's job also involved keeping track of rental cars insured with GEICO through the company's Automated Rental Management System, printing out claim-related documents and mailing them to GEICO customers, making phone calls to set up appointments, and planning

3

travel to and from appointments. (Pl. SMF ¶¶ 5, 6, 14, 16). He drove between fifteen to eighteen hours a week for his job. (*Id.* ¶ 4).

According to Napert, he worked overtime due to those various obligations. (*Id.* ¶ 19). He repeatedly clashed with his supervisor when he worked overtime without prior approval. (*Id.*, Ex. C).

Napert left GEICO in 2011. (Def. SMF ¶ 4). According to several of Napert's time sheets, GEICO fully compensated him for hours that he reported he worked, including overtime hours. (Pl. SMF, Ex. A).[2]

B.   **Procedural Background**

On January 22, 2013, plaintiff filed a complaint in Bristol Superior Court. Defendant removed the case to this Court on March 8, 2013.

The complaint alleges that plaintiff was "not an exempt employee" of defendant "as defined under the Massachusetts General Laws." (Compl. ¶ 14). It alleges that defendant failed to pay him for time he worked more than 38.75 hours per week in violation of Mass. Gen. Laws ch. 149 §§ 148, 150. It also alleges that defendant failed to pay him overtime wages for working more than 40 hours per week in violation of Mass. Gen. Laws ch. 151, § 1A.[3] The complaint seeks damages (including treble damages where applicable), prejudgment interest, attorney's fees, and expenses.

On March 31, 2014, defendant moved for summary judgment, contending that the Massachusetts wage and overtime laws do not apply. Plaintiff contends (1) that defendant is

---

[2] These time sheets do not cover the entirety of Napert's employment.

[3] Although the introduction to the complaint states that GEICO also violated "federal" wage and hour laws, there is no count asserting a federal claim.

required to pay him the wages he earned, (2) that defendant is estopped from contending that he is exempt from being paid overtime, and (3) that he is not exempt from the Massachusetts wage and overtime laws.

II.     **Standard of Review**

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotations omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

In evaluating a summary judgment motion, the court must indulge all reasonable inferences in favor of the non-moving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id*. at 256-57.

III.    **Analysis**

    A.     **Wage Act Claim**

The Massachusetts Wage Act provides that "[e]very person having employees in his

service shall pay weekly or bi-weekly each such employee the wages earned by him . . . ." Mass. Gen. Laws ch. 149, § 148. To establish a claim for weekly wages under the statute, a plaintiff must show that (1) he was an employee under the statute, (2) his form of compensation constitutes a wage under the statute, and (3) the defendants violated the Act by not paying him his wages in a timely manner. *Stanton v. Lighthouse Fin. Servs., Inc.*, 621 F. Supp. 2d 5, 10 (D. Mass. 2009) (citing *Allen v. Intralearn Software Corp.*, 2006 Mass. App. Div. 71, at *1 (2006)). It is undisputed that plaintiff qualified as an employee under the statute and that his compensation constituted a wage. Plaintiff contends that because defendant agreed to pay him a premium wage for any overtime hours he worked, he can recover those wages under the Wage Act.

Defendant's compensation memorandum for auto-damage adjusters states that "[w]orking time beyond 38.75 hours in a week is not allowed without prior approval. However, if any such work is performed it must be recorded and compensated whether it is approved or not." (Compensation Mem. at 3). Defendant contends that plaintiff has not presented any affirmative evidence that he reported overtime hours but was not compensated for them. It further contends that the time sheets plaintiff has submitted show the opposite: that defendant in fact paid plaintiff for all the hours he reported he worked. (*See* Pl. SMF, Ex. A).[4]

"[W]here an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours"

---

[4] Defendant also contends that plaintiff is exempt from the statute because he was paid a weekly salary. It cites *Norceide v. Cambridge Health Alliance*, 814 F. Supp. 2d 17, 26 (D. Mass. 2011), for the proposition that the Wage Act applies only to non-exempt hourly employees. However, the Wage Act does apply to employees who are paid weekly. *See Okerman v. VA Software Corp.*, 69 Mass. App. Ct. 771, 775 (2007).

is not actionable. *Prime Communications, Inc. v. Sylvester*, 34 Mass. App. Ct. 708, 711 (1993) (internal quotation omitted); *see also Warren v. Edgeco, Inc.*, 8 Mass. App. Ct. 171, 175 (1979) (employer liable to employee for wages for unreported overtime hours if employer knew or had reason to know of them).[5] "When employer knowledge is at issue, it has consistently been held that the employee has the initial burden of proving that the employer knew or should have known of the overtime work." *Prime Communications*, 34 Mass. App. Ct. at 711 (collecting cases).

During his deposition, plaintiff testified that he repeatedly informed his supervisor that he was working overtime and was denied requests to list those hours on his time sheets. (Napert Dep. at 99-101, 104-06, 151-53, 158-59). Plaintiff also contends that e-mails between his supervisors also show that they knew about his requests for overtime. (Pl. SMF, Ex. C). Although plaintiff did not report those hours in his time sheets, there is evidence that defendant had notice of them, and there is accordingly a genuine issue of material fact as to whether defendant failed to pay plaintiff for overtime hours he worked in violation of the Wage Act. *See Souto v. Sovereign Realty Assocs., Ltd.*, 23 Mass. L. Rptr. 386, at *3 (2007) (Wage Act claim for overtime wages survived summary judgment where plaintiff stated he worked an average of fifty-five to sixty hours per week in his deposition and a former supervisor's affidavit supported that testimony).[6]

---

[5] Although the courts in *Prime Communications* and *Warren* were interpreting the Fair Labor Standards Act, 29 U.S.C. § 207 *et seq.*, the Massachusetts courts generally look to guidance from analogous federal statutes when interpreting state wage and overtime laws. *See, e.g.*, *Goodrow v. Lane Bryant, Inc.*, 432 Mass. 165, 170 (2000); *O'Donnell v. Robert Half Int'l, Inc.*, 250 F.R.D. 77, 80 n.1 (D. Mass. 2008).

[6] Massachusetts courts have consistently held that the Wage Act imposes strict liability on employers. *See, e.g.*, *Somers v. Converged Access, Inc.*, 454 Mass. 582, 591 (2009) (holding that employer was liable under the Wage Act even when it in good faith classified employee as an independent contractor instead of an employee). The Court does not decide whether defendant is liable even if it did not know, or could not have known, that it failed to

Accordingly, defendant's motion for summary judgment will be denied as to plaintiff's Wage Act claim.[7]

B. **Overtime Wages**

The Massachusetts Fair Minimum Wage Act ("MFMWA") "mandates overtime pay for hours worked over 40 per week at one and a half times the employee's regular rate of pay." *Cavallari v. UMass Memorial Healthcare, Inc.*, 678 F.3d 1, 9 (1st Cir. 2012); *see also* Mass. Gen. Laws ch. 151, § 1A. The statute does not apply to any employee who is employed "as a bona fide executive, or administrative or professional person." *Id.* § 1A(3). Defendant contends that plaintiff is exempt from the statute because he worked in an administrative capacity.

1. **Whether Defendant Is Estopped**

Plaintiff first contends that defendant is estopped from contending that his position is exempt from the requirements of the MFMWA. "To establish estoppel, a party must show '(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." *Reading Co-Op. Bank v. Suffolk Construction Co., Inc.*, 464 Mass. 543, 556 (2013) (quoting *Bongaards v. Millen*, 440 Mass. 10, 15 (2003)). Plaintiff contends that defendant's compensation memorandum for adjusters states that they are "salaried nonexempt" employees. (Pl. MF, Ex. B at 1). He further contends that

---

compensate plaintiff for unpaid overtime hours.

[7] Plaintiff contends he is entitled under the Wage Act to overtime wages for the overtime hours he worked. In *Crocker v. Townsend Oil. Co., Inc.*, 464 Mass. 1 (2012), however, the Supreme Judicial Court held that a person could recover under the Wage Act for overtime hours worked, but that "recovery is limited to uncompensated time worked at the regular rate." 464 Mass. at 7. Plaintiff can recover under the Wage Act for his unpaid overtime work within the three-year limitations period, but only at his regular rate of pay.

because he worked overtime in reliance on that compensation memorandum, defendant is estopped from contending he is an exempt employee under the MFMWA.

Defendant's compensation memorandum states that it pays adjusters a premium wage (in addition to the regular wage) for overtime hours using the "fluctuating work week method." (Pl. SMF, Ex. B at 1). That premium wage was half of the adjuster's hourly rate, which was "computed by dividing the adjuster's weekly salary by the total number of hours worked in that week." (*Id.*). The premium wage promised by defendant's memorandum for overtime work was therefore significantly lower than the overtime wage required by state law. *See* Mass. Gen. Laws ch. 151, § 1A.

Plaintiff therefore could not have reasonably relied on the memorandum as a commitment to pay him the state-law overtime wage. Although the memorandum does state that adjusters are "salaried nonexempt," the rest of the memorandum makes clear that this does not mean that adjusters are entitled to overtime compensation of one and a half times their wages. (Compensation Mem. at 1). There is therefore no genuine dispute about whether it was reasonable for plaintiff to believe that his job was not exempt from the requirements of the overtime law.

Even if plaintiff's reliance was reasonable, "[Massachusetts] law does not regard estoppels with favor, nor extend them beyond the transactions in which they originate." *Licata v. GGNSC Malden Dexter LLC*, 466 Mass. 793, 804 (2014) (quoting *Boston & Albany R.R. Co. v. Reardon*, 226 Mass. 286, 291 (1917) (internal alterations omitted)). While it is possible that plaintiff could have brought a claim for breach of contract or promissory estoppel based on defendant's compensation memorandum, *see Lipsitt v. Plaud*, 466 Mass. 240, 255 (2013), he

9

cannot now use the doctrine of estoppel to recover *more* wages than he was promised. *See Sioufi v. Youville Rehab. and Chronia Disease Hosp.*, 1994 WL 879990, at *3 (1994) ("The court will not, based on promissory estoppel, grant a party more relief that he would have been entitled to if the promise were enforceable."). Defendant is therefore not estopped from contending that plaintiff is exempt from the requirements of the MFMWA.

### 2. **Whether Plaintiff Was Employed in an Administrative Capacity**

Under regulations promulgated pursuant to the FLSA, an "employee employed in a bona fide administrative capacity" means any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management and general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).[8]

> The regulations further state:
>
> To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. . . . Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a). "[E]mployees who spend more than 50 percent of their time performing

---

[8] "Massachusetts law mirrors federal law with respect to the definition of exempt employees and the overtime pay provisions." *O'Donnell*, 250 F.R.D. at 80 n.1 (citing 455 Mass. Code Regs. 2.02(3) and *Swift v. AutoZone*, 441 Mass. 443, 447, 449 (2004)).

exempt work will generally satisfy the primary duty requirement," but "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if other factors support such a conclusion." *Id.* § 541.700(b).

There is no dispute that plaintiff was compensated more than $455 per week. Plaintiff contends that there is a genuine issue of material fact as to whether his primary duty was the performance of management and general business operations and whether his primary duty included exercise of discretion and independent judgment. Defendant contends that under *Robinson-Smith v. Government Employees Ins. Co.*, 590 F.3d 886 (D.C. Cir. 2010), plaintiff meets the requirements of the administrative exemption.

In *Robinson-Smith*, GEICO was sued by two of its auto-damage adjusters for overtime benefits under the FLSA. *Id.* at 887-888. GEICO contended that its auto-damage adjusters were exempt from overtime pay as administrative employees. *Id.* at 888. The *Robinson-Smith* court entered summary judgment in favor of GEICO. *Id.* at 897. In doing so, it found that "the primary duty of a GEICO auto-damage adjuster, which consists of the assessment, negotiation and settlement of automobile damage claims, includes the exercise of discretion and independent judgment." *Id.* at 893. It also found that "the auto damage adjuster has the power to make independent choices 'free from immediate direction or supervision.'" *Id.* at 894 (quoting 29 C.F.R. § 541.207(a)). Finally, the court found that "the adjuster makes choices with respect to matters of significance" because "[h]e is empowered to negotiate with claimants and body shops and settles claims up to $10,000 or $15,000—all actions that bind GEICO financially." *Id.* at 895 (internal quotations omitted).

The facts in this case are virtually indistinguishable from the facts in *Robinson-Smith*.

Here, plaintiff's primary duty consists of the assessment, negotiation, and settlement of automobile damage claims. Although there is some dispute about how much time plaintiff spent on those duties, as opposed to paperwork and other duties, there is no dispute that his work settling insurance claims was the most important of his duties. Plaintiff was also able to make independent choices free from immediate direction or supervision. Although he was reprimanded once for changing a loss value after it had been entered into defendant's database, freedom from immediate direction "does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review." 29 C.F.R. § 541.207(c). Finally, like the adjusters in *Robinson-Smith*, plaintiff was empowered to settle claims for up to $15,000. (Def. SMF ¶ 29).

Plaintiff attempts to distinguish *Robinson-Smith* on two grounds. First, he contends that he merely exercised his skill in applying certain techniques, procedures, and standards when performing damage adjustments for defendant, and that therefore his claim-adjustment work was not administrative. *See* 29 C.F.R. § 541.207(b)). This contention was rejected by the *Robinson-Smith* court, as well as the Ninth and Seventh Circuits in similar cases. *See Robinson-Smith*, 590 F.3d at 891; *In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*, 466 F.3d 853 (9th Cir. 2006), *as amended*, 481 F.3d 1119, 1132 n.9 (9th Cir. 2007); *Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 874-75 (7th Cir. 2008). Here, as in *Roe-Midgett*, plaintiff exercised independent judgment to verify whether actual damage was consistent with the claimed damage, was "on the lookout for fraud," and assessed the value of the damage to the vehicles. 512 F.3d at 874. There is therefore no genuine dispute as to whether plaintiff's claim-adjustment work was administrative.

Second, plaintiff contends that he merely input figures into defendant's database and settled insurance claims for the dollar amount that the software calculated. However, the adjusters in *Robinson-Smith* also used the same software to assist in their appraisal process. *See* 590 F.3d at 888-89 (describing adjuster's work process). The *Robinson-Smith* court noted that "[a]n adjuster makes decisions that are not dictated by the software . . . such as interviewing insureds about pre-existing damage, determining whether damage was caused by a covered event and recommending that payment be withheld on a claim if the damage did not result from a covered loss." *Id.* at 889. Plaintiff here also performed all of these tasks. (*See* Def. SMF ¶¶ 11, 15).[9]

The holding in *Robinson-Smith* is buttressed by guidelines under the FLSA regarding insurance adjusters, which state as follows:

> Insurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

29 C.F.R. § 541.203(a). Plaintiff performed all those tasks except for interviewing witnesses and physicians, evaluating or determining coverage, and making recommendations regarding litigation. He therefore performed a majority of the activities the FLSA regulations list as administratively exempt from the statute.

---

[9] Plaintiff also contends that unlike the adjustors in *Robinson-Smith*, he did not interview witnesses, spend time negotiating with shops over repair times for body work, check for indicia of fraudulent claims, or make independent determinations as to whether to repair or replace a part. However, both plaintiff and the adjusters in *Robinson-Smith* only interviewed insureds about loss claims, not witnesses. *See Robinson-Smith*, 590 F.3d at 897; (Def. SMF ¶ 8, 9). Moreover, plaintiff here did in fact negotiate with repair shops, check for fraudulent claims, and negotiate with defendant's customers. (Def. SMF ¶¶ 15, 19, 33).

13

There is therefore no genuine dispute as to whether plaintiff worked in a position that is exempt from the Massachusetts overtime wage statute. Accordingly, defendant's motion for summary judgment will be granted as to that claim.

## IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment is GRANTED as to the Massachusetts Minimum Fair Wage Act claim and DENIED in all other respects.

**So Ordered.**

    /s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: July 22, 2014    United States District Judge